## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is made and entered into by and between Risikatu Marshall ("Plaintiff") and Simmons Bedding Company, LLC and SSB Manufacturing Company (hereinafter collectively referred to as "Simmons").

### Section 1 – Recitals

WHEREAS, on August 15, 2015, Plaintiff filed a lawsuit against Simmons Bedding Company, LLC in the United States District Court for the Northern District of Georgia, Atlanta Division (styled *Risikatu Marshall v. Simmons Bedding Company, LLC*, Civil Action No. 1:15-CV-02896-AT) (hereinafter referred to as the "Litigation"); and

WHEREAS, the Parties agree that it is in their mutual interests to avoid the uncertainty and continued expense of any and all remaining issues related to Plaintiff's employment with Simmons and the Litigation by reaching a settlement and accommodation of the certain matters encompassed herein, without any admission of law or fact;

NOW, THEREFORE, in consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties covenant and agree as follows:

### Section 2 – Consideration and Settlement Approval

(a) **Consideration:** In exchange for the promises and releases contained in this Agreement:

i. Simmons will cause to be paid jointly to Plaintiff and her attorneys the total sum of Thirty-Six Thousand Dollars and Zero Cents ($36,000.00), to be payable as follows: (1) a check in the amount of Sixteen Thousand Six Hundred Dollars and Zero Cents ($16,600.00), less appropriate deductions for tax purposes, made payable to "Risikatu Marshall," which amount is allocated as back pay and for which a W-2 Form will be issued; (2) a check in the amount of Five Thousand Dollars and Zero Cents ($5,000.00) made payable to "Risikatu Marshall," which amount is allocated as compensatory damages and for which a 1099 Form will be issued; and (3) a check in the amount of Fourteen Thousand, Four Hundred Dollars and Zero Cents ($14,400.00) made payable to Prioleau & Milfort, LLC," which amount is allocated as attorneys' fees and costs and expenses of litigation and for which a 1099 Form will be issued. The parties to this Agreement intend for the attorneys' fees and costs and expenses of litigation to be non-taxable to the Plaintiff in accord with IRS rules and regulations, as well as any other applicable authority, including regulations and the 2004 American Jobs Creation Act. However, the taxability of any portion of the settlement funds will not affect the terms of the Agreement.

1

The funds shall be paid by delivery of the three checks described above to the offices of Prioleau & Milfort, LLC within fifteen (15) days following the date that Plaintiff has both signed and returned the Agreement, and that the seven day revocation period referenced in Section 8 has expired. Each party is responsible for their own tax reporting obligations and payments under this Agreement, unless such tax obligation, fine, or penalty results from an affirmative act of the other party.

   ii.   The Parties agree to dismiss any and all claims asserted in the Litigation with prejudice, with each party to bear their own costs and attorneys' fees; and

   iii.  The Parties agree to not re-initiate the claims set forth in the Litigation or assert any of the other claims released under this Agreement.

The foregoing promises are in full accord, satisfaction, and final compromise settlement of all disputed claims between the Parties to this Agreement for monetary, legal and equitable relief, interest, attorneys' fees, and legal costs and expenses, including, but not limited to, those claims set forth and/or which could have been set forth in the Litigation.

   (b)   **Settlement Approval**: The Parties agree that, upon execution of this Agreement, they shall seek approval of the settlement from the United States District Judge Amy Totenberg, before whom the Litigation is pending, for the purpose of obtaining court approval in accordance with the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. The Parties further agree that the executed Agreement will be promptly e-mailed to Judge Totenberg's chambers, which will allow Judge Totenberg to review and approve the Agreement without it being publicly filed. If the Agreement must be filed with the Court, the parties agree to such filing without the need for further action by the parties. If the District Court does not approve this Agreement, it shall be void *ab initio*, in which case, the Parties agree to continue to make a good faith effort to achieve settlement consistent with the underlying terms included in this Agreement, to the extent possible.

### Section 3 – Complete Release of All Claims

   (a)   **In General**: In exchange for Simmons's promises contained in this Agreement, Plaintiff agrees to irrevocably and unconditionally release any and all claims she may now have against Releasees (defined below), as set forth in this Section 3. Similarly, in exchange for Plaintiff's promises contained in this Agreement, Simmons agrees to irrevocably and unconditionally release any and all claims they may now have against Plaintiff, as set forth in this Section 3.

   (b)   **Claims Released by Plaintiff**: Plaintiff, for herself, her attorneys, agents, assigns, heirs, executors, administrators and successors, hereby fully, finally and forever releases and discharges Simmons and all of their present or former, direct and indirect, parents, principals, subsidiaries and affiliates, the predecessors and successors of each, and all of their officers, officials, directors, employees, agents, insurers, attorneys, assigns, and/or agents ("Releasees") from any and all claims, demands, actions, causes of action, suits, damages, losses, costs, expenses and attorneys' fees of any kind and every character whatsoever, whether known or unknown, which she has or may have against them growing out of or arising from or pertaining to any transaction, dealing, conduct, act or omission by and between Plaintiff and any of the Releasees, or any other matters or things occurring or existing at any time prior to the execution of the Agreement,

2

including but not limited to, the Litigation, and the matters which were alleged or could have been alleged in the Litigation. Plaintiff represents that she is unaware of any other claim, demand, action, cause of action or suit for damages, losses, costs, expenses or attorneys' fees, which she has or may have against Releasees at this time. Plaintiff further agrees and acknowledges that Simmons is relying upon this representation in entering into this Agreement. Furthermore, and without in any way limiting the foregoing, the claims waived and released by Plaintiff include any possible or alleged claims under the Americans with Disabilities Act, the Fair Labor Standards Act, the Equal Pay Act, the Employee Retirement Income Security Act, the Family and Medical Leave Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the National Labor Relations Act, the False Claims Act, and all amendments to the foregoing, and any and all possible claims under federal laws and/or the laws of the State of Georgia and any other state, any and all possible claims under common law, and any and all claims for back pay, overtime wages, benefits, interest, front pay, lost retirement benefits, compensatory damages, punitive damages, liquidated damages, attorneys' fees, costs, and declaratory relief, except as provided in Section 3(e) below.

Plaintiff also specifically releases and waives any claims she may have as of the date of execution of this Agreement against Releasees for any claim of age discrimination under the federal Age Discrimination in Employment Act ("ADEA"), as amended, the Older Workers Benefit Protection Act ("OWBPA"), or any state or local law prohibiting age discrimination, except that she does not waive her right to challenge the knowing and voluntary nature of the release.

(c) **Claims Released by Simmons**: Simmons understands and agrees they are releasing (*i.e.*, giving up) all known and unknown claims, promises, causes of action, or similar rights of any type that they may have at this time against Plaintiff, except as provided in Section 3(e) below.

(d) **Unknown Claims**: The Parties understand they are releasing claims they may not know about. That is their knowing and voluntary intent, even though they recognize someday they might learn some or all of the facts they currently believe to be true are untrue, and even though they might then regret having signed this Agreement. Nevertheless, the Parties are assuming that risk, and they agree this Agreement shall remain effective in all respects in any such case. The Parties expressly waive all rights they might have under any law intended to protect them from waiving unknown claims. They understand the significance of doing so.

(e) **Claims Not Released**: The Parties understand and agree they are not releasing any claims that the law does not permit them to release. They further understand and agree that they are not releasing any claim that relates to: (i) their right to enforce this Agreement; (ii) the rights they retain pursuant to Section 3(d) above; or (iii) any rights or claims that may arise or accrue after they sign this Agreement.

### Section 4 – Covenants

(a) **Employment Termination**: Plaintiff agrees she will not seek future employment in any capacity with Simmons. Plaintiff waives any right to such employment and understands and acknowledges that she does not have any right to such future employment.

3

(b) **The Litigation:** Except as specifically identified herein, the Parties have not filed or caused to be filed any other lawsuit or administrative proceeding with respect to any claim this Agreement purports to release. The Parties promise never to pursue any claim that has been released by signing this Agreement, whether by means of a lawsuit, arbitration, or otherwise, and whether as a named plaintiff, class member, or otherwise.

Plaintiff represents and warrants that, to the best of her knowledge, Job Milfort of Prioleau & Milfort, LLC, is, and has been, the sole attorney for her with respect to the Litigation, and all claims set forth therein, and no other attorney or law firm has any claim for legal fees, costs, and/or expenses relating to the Litigation.

Although the Parties will dismiss with prejudice any and all actions that are currently pending between the parties, including, but not limited to, the Litigation, this Agreement does not require Plaintiff to withdraw, or prohibit Plaintiff from filing, a charge with any government administrative agency (such as the EEOC) as long as Plaintiff does not personally seek any reinstatement, damages, remedies, or other relief governed by any claim that Plaintiff has released, to which Plaintiff hereby waives.

Upon judicial approval of this Agreement, Plaintiff and Simmons agree to dismiss with prejudice the Litigation, including by, but not limited to, filing a Rule 41 Stipulation of Dismissal with Prejudice and any other documents necessary.

(c) **Ownership of Claims:** The Parties agree that they have not assigned, transferred, or given away any of the claims that are being released by this Agreement, nor have they purported to do so.

(d) **Nonadmission of Liability:** Plaintiff agrees not to assert that this Agreement is an admission of liability, guilt, or wrongdoing by Simmons, and Plaintiff acknowledges that Simmons denies they have engaged in wrongdoing of any kind or nature. Simmons agrees not to assert that this Agreement is an admission of liability, guilt, or wrongdoing by Plaintiff, and Simmons acknowledges that Plaintiff denies she has engaged in wrongdoing of any kind or nature.

(e) **Non-disparagement:** The Parties agree and promise that unless required by law to do so, they will not make any oral or written statements or reveal any information to any person, company, agency or other entity which disparages any of the other Parties' reputations or business, or wrongly interferes with the other Parties' business relations.

(f) **Implementation:** The Parties agree to sign any documents or do anything else necessary in the future to implement this Agreement, including signing any documents that may be mandated by the Court.

(g) **Other Representations:** Plaintiff agrees that this Agreement encompasses all of the job-related wrongs or injuries for which she might still be entitled to compensation or relief from Simmons. Simmons similarly agrees that this Agreement encompasses any claims for which they might still be entitled to compensation or relief from Plaintiff. To the best of the Parties' knowledge, all of the factual assertions Plaintiff made to induce Simmons to enter into this Agreement and all of the factual assertions Simmons made to induce Plaintiff to enter into this Agreement are true in all material respects.

4

The Parties agree that the terms of this Agreement do not become effective unless and until the Court approves the Agreement and all parties have fully executed this Agreement evidenced by the date of their signature contained herein.

### Section 5 – Consequences of Violating Agreement

Plaintiff agrees to pay the reasonable attorneys' fees, costs and damages (which include, but are not limited to, Simmons's costs from the Litigation) that Simmons may incur as a result of Plaintiff breaching a promise that has been made in this Agreement, or if any representation she made in this Agreement was false when made. Simmons agrees to pay the reasonable attorneys' fees and damages that Plaintiff may incur as a result of Simmons breaching a promise that has been made in this Agreement, or if any representation it made in this Agreement was false when made.

### Section 6 – Review

The Parties acknowledge: (a) they have carefully read this Agreement and each of its provisions; (b) if they initially did not think any representation made in this Agreement was true, or if they were uncomfortable making it, all doubts and concerns have been resolved before signing this Agreement; (c) they fully understand what the Agreement and each of its provisions means; (d) they are entering into the Agreement and each of its provisions knowingly and voluntarily; and (e) they are competent to execute this Agreement. Simmons encouraged Plaintiff to discuss this Agreement, and each of its provisions, with her counsel (at her own expense) before signing it. All Parties acknowledge that they sought the advice of counsel to the extent they deemed appropriate before signing this Agreement.

### Section 7 – Miscellaneous

(a) **Entire Agreement and Severability**: This is the entire agreement between the Parties on the subject matter of this Agreement. This Agreement may not be modified or canceled in any manner except by a writing signed by Plaintiff and Simmons. Plaintiff acknowledges that Simmons has made no representations or promises to her, other than those in this Agreement. Simmons similarly acknowledges that Plaintiff has made no representations or promises to them, other than those in this Agreement. If any provision in this Agreement is found to be unenforceable by a court of competent jurisdiction, all other provisions will remain fully enforceable and the unenforceable provision can be modified by a court of law and/or severed from this Agreement.

(b) **Successors**: This Agreement binds the Parties' heirs, administrators, representatives, executors, successors, and assigns, and will inure to the benefit of all Parties and their respective heirs, administrators, representatives, executors, successors, and assigns.

(c) **Interpretation**: This Agreement shall be construed as a whole according to its fair meaning. It shall not be construed strictly for or against any of the Parties. Unless the context indicates otherwise, the singular or plural number shall be deemed to include the other. Captions are intended solely for convenience of reference and shall not be used in the interpretation of this Agreement.

(d)     **Governing Law, Jurisdiction and Venue:** This Agreement shall be governed by the statutes and common law of the State of Georgia. Any proceeding to interpret or enforce the terms of this Agreement shall take place in a State Court located in Fulton County, Georgia, or in the United States District Court for the Northern District of Georgia, Atlanta Division, and Plaintiff and Simmons consent and agree to the jurisdiction of such Courts and the venue of such proceedings.

(e)     **Execution:** This Agreement may be executed simultaneously or in any number of counterparts and by different parties in separate counterparts. Each counterpart when so executed shall be deemed to be an original and all of which together shall constitute one and the same Agreement.

### Section 8 – Notice to Plaintiff

The Agreement means, in part, that you give up your rights to damages or money based on claims of age discrimination against Simmons, if the age discrimination claims arose before you signed the Agreement. Any claims for damages or money based on age discrimination, which may arise after signing the Agreement, are not affected by the Agreement.

You have the right to revoke (that is, cancel) the Agreement within seven (7) days of the date you sign the Agreement. If you revoke the Agreement, then the Agreement shall become null and void, meaning you will not receive the promises and other benefits set forth in the Agreement. To be effective, your revocation must be in writing and returned to the following address within seven (7) days of the date you sign the Agreement:

**Douglas J. Miller**
**Elarbee, Thompson, Sapp & Wilson, LLP**
**800 International Tower**
**229 Peachtree Street, N.E.**
**Atlanta, Georgia 30303**

If by mail, revocation must be (1) postmarked within the seven-day period, (2) properly addressed, and (3) sent by certified mail, return receipt requested. You agree that the consideration described in Section 2 of this Agreement is consideration to which you would not otherwise be entitled without signing the Agreement, and that this consideration constitutes payment in exchange for signing the Agreement. You further agree that if you exercise your right to revoke this Agreement, in addition to providing the required written notice within the seven (7) day revocation period, you will provide additional notice of such revocation by calling Douglas J. Miller at (404) 582-8404 within the seven (7) day revocation period and advising him of such revocation decision.

You acknowledge that you have been given ample time of not less than **twenty-one (21)** calendar days to consider the Agreement, that you have been advised to consult with an attorney prior to signing it, that you have in fact consulted with an attorney prior to signing it, and that your signing of the Agreement is completely voluntary.

> TAKE THIS AGREEMENT HOME, READ IT, AND CAREFULLY CONSIDER ALL OF ITS PROVISIONS BEFORE SIGNING IT: IT INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS. PLEASE ALSO CONSULT WITH YOUR ATTORNEY PRIOR TO EXECUTING THIS AGREEMENT.

Executed this __4th__ day of __Dec__, 2015.

_____
RISIKATU MARSHALL

Sworn to and subscribed before me this _4th_ day of _December_, 2015.

_____
NOTARY PUBLIC
My Comm'n Expires: 03/14/2019

OMISHOLA ADEYEMO
Notary Public, Georgia
Dekalb County
My Commission Expires
03/14/2019

Executed this __7th__ day of __December__, 2015.

_____
SIMMONS BEDDING COMPANY, LLC
By: Kristen K. McGuffey
Its: Executive Vice President

Sworn to and subscribed before me this _7th_ day of _December_, 2015.

_____
NOTARY PUBLIC
My Comm'n Expires: July 11, 2017

Jeanne M Maynard
Notary Public
Fulton County, State of Georgia
My commission expires 7-11-2017

7

Executed this 7th day of December, 2015.

_____
SSB MANUFACTURING COMPANY

By: Kristen K. McGuffey

Its: Executive Vice President

Sworn to and subscribed
before me this 7th day
of December, 2015.

_____
NOTARY PUBLIC
My Comm'n Expires: July 11, 2017

Jeanne M Maynard
Notary Public
Fulton County, State of Georgia
My commission expires 7-11-2017